UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JAMES COLACINO and COLACINO
INDUSTRIES, INC.,
                            Plaintiffs,

v.

MIKE DAVIS,
                            Defendant.
----------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 9648 (VB)

Briccetti, J.:

      Plaintiffs James Colacino and Colacino Industries, Inc., bring this action against defendant Mike Davis, business manager of the International Brotherhood of Electrical Workers, Local 840 (the "Union"), asserting state law claims for extortion, slander, and tortious interference with plaintiffs' business relationships.

      Now pending is plaintiffs' motion to remand the case to Supreme Court, Westchester County, where it was originally commenced. (Doc. #10).

      For the following reasons, the motion is DENIED.

## BACKGROUND

      In considering the motion to remand, the Court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in plaintiff's favor. See Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006). The Court also considers materials outside the complaint, as it may, "such as documents attached to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis." Romero v. DHL Express (U.S.A), Inc., 2016 WL 6584484, at *1 (S.D.N.Y. Nov. 7, 2016).[1]

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

I.  Factual Background

Plaintiffs employ pipe and wire electrical workers for construction projects in the water, food, and manufacturing industries in and around Newark, New York.

A.  Plaintiffs' Relationship with the Union

Since at least February 2011, the Union, which operates a hiring hall for electricians within the construction industry, has been a party to several successive collective bargaining agreements ("CBAs") with the Finger Lakes New York Chapter of the National Electrical Contractors Association ("Finger Lakes NECA"), a multi-employer association that covers a five-county region including Newark, New York.

On February 24, 2011, Colacino executed a letter of assent, purportedly binding one of his companies, Newark Electric Corporation ("Newark Electric"), to the CBA and any successor CBAs between the Union and Finger Lakes NECA.  In August 2012, following a dispute concerning whether Newark Electric and Colacino's other companies—Newark Electric 2.0, Inc., and Colacino Industries—were also bound to the letter of assent and the CBA, defendant filed a complaint against the three entities with the National Labor Relations Board ("NLRB").

The NLRB concluded Colacino's three companies—including Colacino Industries—were "a single employer and alter egos," and bound to the letter of assent Colacino had signed on behalf of Newark Electric in February 2011, as well as the CBA and any automatic extensions thereof.  See Newark Elec. Corp., 366 N.L.R.B. 145 (2018).  The NLRB's application to enforce its order is pending before the Second Circuit.  See NLRB v. Newark Elec. Corp., No. 18-2784 (2d Cir. filed Sept. 20, 2018).

B.     Defendant's Alleged Conduct

According to plaintiffs, defendant Davis has for years "engaged in a reign of terror and a pattern of harassment, slander, veiled threats, intimidation, interference in business relationships, and extortion, all in an effort to destroy [plaintiffs] in order to enrich himself in his personal capacity as the [business manager of the Union]."  (Doc. #4-1 ("Compl.") ¶ 2).  Specifically, plaintiffs allege Davis pressured Colacino to sign an agreement with the Union to convert Colacino Industries into a union contractor; "relentlessly stalk[ed] [] Colacino at his office for hours on end" (id. ¶ 5); blackmailed plaintiffs by hiring their employees, only to then lay them off to destroy plaintiffs' business; filed frivolous complaints against plaintiffs with the NLRB; "bombarded [] Colacino with phone calls, texts and email messages, and Facebook posts" (id. ¶ 7); "contacted [] Colacino's vendors, contractors, and employees in an effort to intimidate [them] from doing business with plaintiffs" (id. ¶ 9); and commented to third parties that Colacino was a "crook" and "thief," in attempts to destroy Colacino's reputation.  (Id.).

According to plaintiffs, such conduct amounted to an attempt to "obtain and deprive [] Colacino of his property, and to obtain monies from [] Colacino, . . . with improper threats, misuse of his [Union position], and under a false claim of right."  (Compl. ¶ 11).  Plaintiffs further allege defendant's false statements to third parties about plaintiffs were defamatory.

II.    Procedural History

On September 18, 2019, plaintiffs filed the complaint in Supreme Court, Westchester County.  On October 18, 2019, defendant timely removed the case pursuant to 28 U.S.C. §§ 1441(a) and 1446.  Defendant's notice of removal asserts this action includes claims that arise, if at all, under federal law, such that the Court has original jurisdiction under 28 U.S.C. § 1331.

On October 25, 2019, defendant timely answered the complaint.

**DISCUSSION**

I.   <u>Legal Standard</u>

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The rules regarding removal are to be strictly construed. <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 32 (2002). "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." <u>Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009). Thus, the party seeking removal and asserting federal jurisdiction bears the burden of establishing the court has original jurisdiction. <u>McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.</u>, 857 F.3d 141, 145 (2d Cir. 2017).

"Under the well-pleaded complaint rule, a defendant generally may not remove a case to federal court unless the <u>plaintiff's</u> complaint establishes that the case arises under federal law." <u>McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.</u>, 857 F.3d at 145 (emphasis in original). This rule, however, has a corollary—the "artful pleading rule—pursuant to which [a] plaintiff cannot avoid removal by declining to plead necessary federal questions." <u>Romano v. Kazacos</u>, 609 F.3d 512, 518–19 (2d Cir. 2010). For example, when "a federal statute wholly displaces the state-law cause of action, such that the claim, even if pleaded in terms of state law, is in reality based on federal law," the Court is obligated to construe the complaint as raising a federal claim and therefore arising under federal law. <u>McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.</u>, 857 F.3d at 145.

II.     Application

    A.     LMRA Section 301

Defendant contends plaintiffs' causes of action for extortion and tortious interference with business relationships are preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA").

The Court agrees.

The federal preemption exception to the well-pleaded complaint rule, discussed above, applies to claims under Section 301 of the LMRA. Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). The statute provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Accordingly, Section 301 "displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." Caterpillar Inc. v. Williams, 482 U.S. at 394. Indeed, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (noting Section 301 preemption turns on "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract")); see also Wynn v. Rochester, 273 F.3d

153, 157 (2d Cir. 2001) ("Where the resolution of a state-law claim depends on an <u>interpretation</u> of the [a] collective-bargaining agreement, the claim is pre-empted.") (emphasis in original). Section 301 complete preemption applies even when a plaintiff's claims are directed at a Union's agent.  See <u>Crowne Invs., Inc. v. United Food & Commercial Workers</u>, 959 F. Supp. 1473, 1479 (M.D. Ala. 1997) (quoting <u>Atkinson v. Sinclair Refining Co.</u>, 370 U.S. 238, 249 (1962)) (noting "labor policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both," for claims that are inextricably intertwined with collective bargaining agreements).

Here, plaintiffs' first cause of action, styled "extortion," comprises allegations that defendant "attempted to obtain and deprive" plaintiffs of their property and money through threats, improper use of defendant's position as Union business manager, and "under a false claim of right."  (Compl. ¶ 11).  Such a claim, if actionable,[2] is "substantially dependent upon," <u>Vera v. Saks & Co.</u>, 335 F.3d at 114, plaintiffs' purportedly enforceable agreements—the letter of assent and the CBA—with the Union, and would require the Court's consideration of those agreements and defendant's conduct, as business manager of the Union, in seeking to enforce the agreements.  Accordingly, plaintiff's state law extortion claim is preempted by Section 301 of the LMRA.

---

[2]  The Court notes extortion under New York law appears to be a criminal offense only, not a private right of action.  See <u>Minnelli v. Soumayah</u>, 41 A.D. 3d 388, 388–89 (1st Dep't 2007) ("The first cause of action for extortion and attempted extortion, alleging that defendant attempted to compel and compelled plaintiff to deliver money to him by threatening physical harm to plaintiff and her employees and a breach of their confidentiality agreement, was properly dismissed on the ground that extortion and attempted extortion are criminal offenses . . . that do not imply a private right of action.  Moreover, although extortionate behavior, coercion and duress may be elements of a cause of action for tortious interference with contract or unjust enrichment, at common law there was never a private cause of action for extortion.").

Plaintiffs' third cause of action, for tortious interference with business relationships, is comprised of the following four elements under New York law: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev, L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008). Here, the first element implicates, and requires interpretation of, the purportedly enforceable agreements between plaintiffs and the Union, and, in light of those agreements, inquires whether plaintiffs had legitimate business relations with any third party. Moreover, the third element—that defendant acted through wrongful means—further necessitates the Court's consideration of the agreements between, and underlying obligations of, plaintiffs and the Union, to assess whether defendant's conduct was unjustified. Accordingly, Section 301 also preempts plaintiffs' tortious interference with business relationships claim.

For the reasons set forth above, plaintiff's claims for extortion and tortious interference with business relationships are preempted by Section 301.

B.   LMRA Section 303

Defendant further argues plaintiffs' tortious interference with business relationships claim is also preempted by Section 303 of the LMRA.

The Court agrees.

Section 303 of the LMRA "makes it unlawful for a labor organization to engage in conduct defined as an 'unfair labor practice' in Section 8(b)(4) of the [National Labor Relations Act ("NLRA")]," Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 955 F.2d 831, 833 (2d Cir. 1992), and provides a private right of action for conduct that violates

7

Section 8(b)(4)." Allstate Interiors, Inc. v. United Bhd. of Carpenters, 2010 WL 3894915, at *2 (S.D.N.Y. Sept. 10, 2010). According to Section 8(b)(4):

> It shall be an unfair labor practice for a labor organization or its agents . . . (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person . . . to cease doing business with any other person.

29 U.S.C. § 158(b)(4). Such conduct—"secondary boycott activity"—"is directed to persuading the customers of the secondary employer to cease trading with him in order to force him to cease dealing with, or to put pressure upon, the primary employer." Allstate Interiors, Inc. v. United Bhd. of Carpenters, 2010 WL 3894915, at *2 (quoting NLRB v. Retain Store Emps. Union, 447 U.S. 607, 612 (1980)). Accordingly, "Section 8(b)(4) prohibits labor organizations [and their agents] from using threats, coercion, or restraint to interfere with the business relationships of employers engaged in commerce for the purpose of causing the employer to cease doing business with any other person." Id.

The Second Circuit has held Section 303 "pre-empts state law in the area of secondary activities." Allstate Interiors, Inc. v. United Bhd. of Carpenters, 2010 WL 3894915, at *2 (first quoting Iodice v. Calabrese, 512 F.2d 383, 390 & n.1 (2d Cir. 1975); then citing Monarch Long Beach v. Soft Drink Workers, Local 812, 762 F.2d 228 (2d Cir. 1985)). This is true even when a plaintiff's tortious interference claim arises "from the same facts that support a parallel defamation claim." Id. at *4 ("The presence of a state law defamation claim will not defeat federal jurisdiction over a parallel unfair labor practice claim implicating commerce.").

8

Moreover, preemption applies even when a plaintiff's claim is directed at a union's agent only. See Universal Commc'ns Corp. v. Burns, 449 F.2d 691, 693–94 (5th Cir. 1971).

Here, plaintiffs' claim for tortious inference with business relationships is premised on allegations of secondary boycott activity. Indeed, plaintiffs allege defendant, an agent of the Union, contacted plaintiffs' "vendors, contractors, and employees in an effort to intimidate [them] from doing business with plaintiffs," and also commented to third parties that Colacino is a "crook" and "thief." (Compl. ¶ 9). Such allegations give rise to a Section 303 claim pursuant to the LMRA. Accordingly, plaintiffs' state law tortious interference with business relationships claim is preempted by Section 303.

    C.    Slander Claim

In his notice of removal, defendant contends this Court may exercise supplemental jurisdiction over any of plaintiffs' claims not within the Court's original jurisdiction.

The Court agrees.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "For purposes of [S]ection 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011).

Defendant does not argue plaintiffs' second cause of action for slander—defamation predicated on "spoken defamatory words," Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001)—is preempted by the LMRA or within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331. Nevertheless, this claim derives from a common nucleus of operative fact as plaintiffs'

other claims, and, as such, falls within the Court's supplemental jurisdiction. Accordingly, the Court shall exercise supplemental jurisdiction over plaintiffs' defamation claim.

## CONCLUSION

The motion to remand is DENIED.

The Clerk is instructed to terminate the motion. (Doc. #10).

Dated: July 13, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge